MOSES DARROW vs. THE ADAMS EXPRESS COMPANY AND OTHERS.

The 324th section of Gen. Statutes, tit. 1, provides that where a debt or goods are attached by process of foreign attachment as the property of the debtor therein, and are claimed by another party, whose demand for them is refused by the garnishee because of such attachment, such party may bring a bill in equity, in the nature of an interpleader, against all the parties to such foreign attachment, and that the court shall have full power to decide as to the ownership, and do justice between the parties. Held—

1. That under the statute the court of equity was empowered to take entire jurisdiction of the matter pending at law.

2. That the assumption of jurisdiction by the court of equity operated to suspend the proceedings in the court of law. (Two judges dissenting).

3. That the statute was applicable to cases of foreign attachment pending before a justice of the peace, as well as to those pending in the higher courts.

4. That when the parties were duly brought before the court of equity by being made respondents and by proper service, the petitioner had done his whole duty, and was not bound to assert his rights before the court of law, or get out an injunction against the legal proceedings.

5. And that therefore, where a garnishee, thus made a respondent in a bill in equity, had been subjected upon a *scire facias* brought against him, and decided in the court of law while the bill in equity was pending, and had satisfied the judgment recovered against him, the fact constituted no defense against the claim of the petitioner in the bill in equity.

BILL IN EQUITY, for an interpleader, under the 324th section of the act regulating civil actions; brought to the Court

of Common Pleas of New London County, and tried before
*Holbrook, J.*

The petition, which was dated September 4th, 1873, alleged
that the petitioner, on the 20th day of August, 1873, was the
owner of certain articles of jewelry, which were described in
the petition, of the value of five hundred dollars, which were
on that day put up in a package marked " C. N. Middleton,
care M. Darrow, New London, Connecticut, value $200, per
Adams Express Company," and in this form deposited with
the Adams Express Company at New Britain to be trans-
ported from New Britain to New London, and that, after they
had reached New London, and were in the possession of the
express company there as bailees for the petitioner, who was
entitled to demand and receive them there, they were attached
by virtue of a writ of attachment, with a factorizing process
annexed thereto, brought by one J. E. Whiting, plaintiff,
against one Charles N. Middleton, defendant, dated the 26th
day of August, 1873, and returnable before James H. Beach,
a justice of the peace for Hartford County, at his office in
New Britain, on the 9th day of September, 1873, and demand-
ing the sum of fifty dollars, which writ was duly served on
said Middleton, and a copy thereof left with the agent of the
Adams Express Company, at their office in New London ;
and that the Adams Express Company refused to deliver
the same to him, though he demanded the same and was
ready and had offered to pay all proper transportation charges
thereon, on the alleged ground that they were the garnishees
in said process of foreign attachment, and that the same were
held by them to await the result of the proceedings and judg-
ment upon said garnishment ; praying the court to compel
the parties to interplead with the petitioner, and severally set
forth their rights with regard to said package, that the rights
and claims thereto between the respondents and the petitioner
might be finally settled and determined ; and that said Whit-
ing might be enjoined against further claiming or proceeding
to levy upon said package, and the Adams Express Company
be compelled to deliver the same to the petitioner under pen-

alty; or that some other relief suited to the case and conformable to equity might be granted.

The Adams Express Company and Whiting and Middleton were made respondents, but the Adams Express Company alone made defense.

This court found the averments of the petition to be true, and also found the following further facts :—The petitioner, at the time when the factorizing process was served on the Adams Express Company, was the owner of the package described in the petition, and at the time of his demand upon the company was entitled to the possession of the same.

In the action of assumpsit brought by Whiting against Middleton, in which the Adams Express Company was made garnishee, judgment was rendered by the justice, before whom it was returnable, in favor of the plaintiff, to recover of the defendant the sum of $41.22, and execution was issued therefor. The execution was put into the hands of a proper officer, who, after making legal demand of Middleton, the defendant, and of the Adams Express Company, as garnishees, returned the same wholly unsatisfied; and thereupon Whiting brought an action of *scire facias* against the Adams Express Company, by a writ signed by the same justice of the peace, and returnable before him on the 23d day of September, 1873, which writ was duly served upon the company and returned to the justice. The case was continued to October 1st, 1873, when judgment was rendered against the Adams Express Company, the following being the justice's record of the judgment :—

" *J. E. Whiting vs. The Adams Express Company.*

" Be it remembered that the above entitled cause came before me September 23d, 1873, when it appeared that the defendant had served notice upon Moses Darrow of New London, in accordance with the provisions of section 300, chapter 15, title 1, of the General Statutes of Connecticut, and it was thereupon by this court ordered that the case be continued until October 1st, 1873, at nine o'clock in the forenoon, and that on or before said date Moses Darrow aforesaid should give to the defendants herein security in the sum of

one hundred dollars, to indemnify them against loss by the claims of the plaintiff; that on said 1st day of October, the said Darrow not appearing, (although notified of said adjournment and order,) and no security having been given, this court renders judgment against him, and having enquired into the matter finds that the property in the possession of the defendants is the property of the defendant in the original action on which this is brought, and judgment is rendered against the defendants herein in the sum of $44.74 debt, and $11.27 costs of suit."

Execution was issued on this judgment against the Adams Express Company, who paid the amount of the judgment on demand being made by an officer on the execution, the whole amount paid by the company being $59.63.

The respondents in the present suit on the trial asked the court to hold that the judgment rendered by the justice was a bar to the claim of the petitioner; that the petitioner was guilty of negligence in not appearing before the justice when notified, as set forth in the record of the judgment; and that the payment by the company gave it a lien upon the package; but the court overruled these claims, and decided that the package belonged to Darrow, the petitioner, and that he was entitled to the possession thereof upon payment to the Adams Express Company of their usual and reasonable charges for transportation from New Britain to New London.

The court therefore ordered the clerk of the court, in whose hands the package had been impounded pending this suit, to deliver it over to the petitioner on payment of the usual transportation charge, the clerk to hold the money so paid subject to the order of the Adams Express Company, and that costs be taxed against the company.

The Adams Express Company brought the record before this court by a motion in error, assigning as error,—1. That the court erred in not holding upon the facts that the question of the title to the package was finally determined by the judgment of the justice in the *scire facias*, and that that judgment was conclusive upon the petitioner and a bar to his bill.—2. In not holding upon the facts that the petitioner was

guilty of negligence in not appearing before the justice when notified in conformity with the statute, and that the judgment rendered against him should be paid by him, and not by the Adams Express Company, an innocent party.—3. In not holding upon the facts that as the Adams Express Company paid the sum of $59.63 on account of the package, by direction of a competent court of law, it had a lien upon the package for that amount.

*H. H. Barbour, Jr.*, for the plaintiffs in error.

*First.* The court erred in not holding that the judgment rendered. by the justice upon the *scire facias* finally determined the question of the ownership of the jewelry, and was conclusive upon the petitioner and a bar to his bill.

1.  Had no petition been brought, would the judgment be conclusive against Darrow ? To this there can be but one answer. He was a party to the justice proceedings. Barbour on Parties, 17 ; *Moore* v. *Spackman*, 12 S. & R., 287. The judgment and records of the justice (made a part of the finding) establish beyond question the fact that Darrow was notified in conformity to the statute. *Hendrick* v. *Whittemore*, 105 Mass., 23 ; *Coit* v. *Haven*, 30 Conn., 190 ; *Martin* v. *McLean*, 49 Misso., 361. The judgment, therefore, was conclusive alike against Darrow and the company upon the question of the ownership of the jewelry, and is a bar to this proceeding. 1 Swift Dig., 752 ; *Canaan* v. *Greenwoods Turnpike Co.*, 1 Conn., 7 ; *Webb* v. *Rocky Hill*, 21 id., 468 ; *Spencer* v. *Dearth*, 43 Verm., 98 ; *Commonwealth of Virginia* v. *Levy*, 23 Gratt., 21.

2.  Does the fact that this petition was brought alter the case ? In 1852 the legislature conferred upon justices of the peace and the higher courts the power to issue *scire facias* writs, and to render judgments thereon, which judgments should be conclusive upon any person made a party thereto either by regular citation or by subsequent notice of the pendency thereof. That power has never been restricted or taken away. Express statutory enactment can alone deprive a court of any part of its jurisdiction. Kerr· on Equity, 6,

and cases cited.   Jurisdiction of the subject matter was con-
ferred upon Justice Beach when the Whiting-Middleton writ
was served, for the *scire facias* was not a new action, but a
ministerial writ founded upon the record in that case.   And
that jurisdiction was not affected by the bringing of the
petition.     *Gray* v. *Thrasher*, 104 Mass., 373 ; *Osgood* v.
*Thurston*, 23 Pick., 110 ; *Webster* v. *Adams*, 58 Maine, 317 ;
*Sherwood* v. *Stevenson*, 25 Conn., 438 ; *Day* v. *Welles*, 31 id.,
349 ; *Smyth* v. *Ripley*, 32 id., 157.   If the justice knew of
the petition he ought not to have refused to issue the writ,
for had the plaintiff awaited the decision of the Court of
Common Pleas he might have lost his right thereto.   The
writ must issue within one year from the original judgment.
The two statutes are not conflicting.   The one under which
this petition was brought was undoubtedly enacted so that in
cases pending in the higher courts, where necessarily a long
time must elapse before the question of the ownership of
property in the hands of a garnishee could be determined by
*scire facias*, a claimant might have the matter speedily dis-
posed of.   This case is different, and the Court of Common
Pleas, under the circumstances, ought to have dismissed the
bill.   The existence of jurisdiction is never of itself a reason
for its exercise.   Kerr on Equity, 6.   Clearly the justice,
having issued the writ, could take cognizance of it on the
return day, unless enjoined against further proceedings by a
proper tribunal.   *Webster* v. *Adams*, 58 Maine, 317.

*Second.*   The court erred in not holding that Darrow was
guilty of negligence in not appearing before the justice when
notified in conformity with the statute, and that the judg-
ment (the direct consequence of that negligence) should be
satisfied by him, and not by the express company—an inno-
cent party.

That Darrow was guilty of legal negligence cannot be
doubted.   He therefore is entitled to no relief in a court of
equity.   Kerr on Equity, 18.   The only proper course for
him was to appear before the justice and defend, or plead the
pendency of his petition.   Having neglected to exercise his
rights there, he is now entitled to no relief.   *Webster* v.

*Cedar Rapids & St. Paul R. R. Co.*, 27 Iowa, 315; *Reid* v. *Spoon*, 66 N. Car., 415; *Bernecker* v. *Miller*, 44 Misso., 102; 1 Swift Dig., 610.

*Third.* The court erred in not holding that as the company paid the sum of $59.63 on account of the jewelry by direction of a court of law, having jurisdiction of the subject matter, and of all the parties, it equitably has a lien on the jewelry for that amount. Or in other words—that the company is an innocent, disinterested party, forced into this matter by the foreign attachment laws of the state; that in every particular it has conformed to those laws; that already it has been put to serious trouble and expense by Whiting and Darrow; and that it is against law and right that, having in good faith and by compulsion paid $59.63, it should be deprived of the only means by which it can indemnify itself, and, in addition thereto, be required to pay full costs to Darrow. A court of equity will never allow itself to be made the instrument of injustice to any party. Kerr on Equity, 7. Justice Beach had the power to issue the *scire facias* writ. He had the power to bring Darrow within his jurisdiction. He issued the writ, Darrow was made a party thereto, and exercising his jurisdiction the justice rendered judgment against Darrow and the company. That judgment the latter has paid, and by every principle it is entitled to protection. *Adams* v. *Filer*, 7 Wis., 306; *Embree* v. *Hanna*, 5 Johns., 101: *Holmes* v. *Remsen*, 4 Johns. Ch., 460; *Hull* v. *Blake*, 13 Mass., 153; *Meriam* v. *Rundlett*, 13 Pick., 511; *Anderson* v. *Young's Executors*, 21 Penn. S. R., 443; *American Bank* v. *Rollins*, 99 Mass., 313. When the *scire facias* was served on the company, and when it caused notice to be served on Darrow, the company had no knowledge of the petition, for a copy was not left with its agent until two days after the return day of the writ. So far as the company was concerned there was no petition pending. *Spalding* v. *Butts*, 6 Conn., 30; *Gates* v. *Bushnell*, 9 id., 530; *Studwell* v. *Cooke*, 38 id., 549. The statute under which Darrow brought his petition gives the court unlimited authority in order that justice may be done to all parties. In the exercise of that

power, (if the judgment of the justice was not a bar,) the court ought to have so framed its decree that the company should not be injured, nor the particular lien which it had upon the package be destroyed.

*Halsey*, for the defendant in error.

The Court of Common Pleas had full and exclusive jurisdiction over the parties and the subject matter.

1. The process of foreign attachment is purely statutory. It has no foundation or analogy in the common law. It was derived from a custom of London, and was transplanted into our system by statute in 1726. Its preamble then was: "An Act for the preventing fraud and deceit sometime practiced and devised by ill-minded debtors, who betrust their goods, estate or effects in the hands of others, with intent to resume and receive the same to their own use, and thereby defeat their creditors of their just dues." WAITE, J., in *Treadway* v. *Andrews*, 20 Conn., 392.

2. The proceeding being statutory, we are to look to the statute itself for guidance. It is simply a question of statutory construction, guided by settled rules applicable to the subject.—1st. The first and most reliable rule is to ascertain the *mischief* which existed prior to the statute, and so to construe it as to suppress the mischief and advance the remedy; and the duty of a good judge is to be even astute in that construction which shall render the remedial statute efficacious. What was the mischief? Prior to the supplemental act of 1854, the owner of property sequestered by process of foreign attachment had no remedy whatever. The rights of every other party were protected. By the original act, the debtor was provided with an exceptional process for the collection of his debt by substitution and subrogation. By the act of 1852 the garnishee might take appropriate steps to relieve himself from liability or costs. But the true owner, whose property was locked up by process *in invitum*, had no remedy. He must await proceedings which might never be commenced, or which, if commenced, must be tried in a forum selected by, and a course of pro-

ceeding dependent upon, the caprice of strangers. This was the mischief to be remedied, and which the act of 1854 was to remedy. "We conceive the object of this statute to be, to give a summary remedy when a plaintiff comes into court, and has a right to come, as in other instances at common law." *Upton* v. *Hubbard*, 28 Conn., 287. To construe it as the respondents claim, is not only to nullify it, to suppress the remedy, but to make it a mockery. It is to encourage the person whose property has been thus locked up, to a delusive remedy, which involves him in expensive litigation; to deny relief in a court of equity, which the statute has clothed with power, and to mulct him with costs as punishment for resorting to its protection.—2d. The second rule is, that a former statute can never prevail against a later and repugnant statute; a principle of construction crystallized in the expressive maxim, " *Leges posteriores, priores contrarias abrogant.*" Such an incompatibility, or inconsistency, as that both rules will not stand at *the same time*, when applied to *the same case*, always justifies the application of this rule. Apply that test to this case. The language of the act on which the respondent relies is : " shall be a bar to the claim of the assignee," &c. Sec. 300. The act on which the petitioner relies is : " shall have full power to decide to whom they belong, and what disposition shall be made thereof, and all other matters connected with the proceeding that may be proper to do justice," &c. Sec. 325. Indeed, the very highest proof of the utter incompatibility of the two acts is, that the respondent is here claiming that the proceeding under the one destroys our proceeding under the other—reversing the rule, and claiming in effect that the prior repeals the later statute.—3d. This brings us to the third rule of construction :—that one part of a statute shall be construed by another so that the whole may, if possible, stand; " *Ut res magis valeat quam pereat.*" By this rule proceedings under either statute, once commenced, must supersede application to the other. If it be perfectly apparent that both proceedings cannot be carried on simultaneously without conflict and confusion, then the rule of

decision must be, *ex necessitate rei*, that proceedings once commenced shall be carried on to their ordinary and legal result to the exclusion of the other. This view is supported by the established and well known principle that when a court has once acquired jurisdiction of the parties and the subject matter, it will pursue its jurisdiction to final judgment, any other tribunal to the contrary notwithstanding. Where different courts have concurrent jurisdiction, that before which proceedings are first instituted, and whose jurisdiction first attaches, has authority paramount to the others, and cannot be ousted of its jurisdiction by subsequent proceedings in those courts. *Stearns* v. *Stearns*, 16 Mass., 171; *Bemis* v. *Stearns*, id., 203; *Hall* v. *Dana*, 2 Aik., 381.—4th. Apply this rule to the facts in this case. Our petition was dated and served first. The respondent did not plead or show this fact on the *scire facias*. He did not ask any adjournment and did not appeal. He did not attempt to have the proceeding stayed by injunction. He had full opportunity to protect himself against an unauthorized and unlawful judgment against him on the *scire facias*.

3. If priority is to be given to either statute, manifestly on principles of justice it is due to the later.—1st. Because jurisdiction is given to a higher court than a justice, and to a court of equity instead of law.—2d. A court of equity can protect the rights of all.—3d. Equity has all the parties before it, and the *res contesta*.

4. It follows from these principles that the respondents may recover back the money which they have paid to Whiting. The Court of Common Pleas could, by its decree, have prevented the proceedings in the *scire facias*, if they had not then been concluded. Even as the case stood, the court might have ordered Whiting to refund to the express company; but no such request was made. It was not the duty of the petitioner to make it. The anxiety of the express company seems to have been directed to an attempt to compel the lawful owner of the property to pay Whiting's bill, instead of protecting itself against Whiting. These

parties may now well be left to settle matters between themselves. The petitioner is not interested in that question.

PARDEE, J. Prior to the year 1854, under the statute establishing and regulating the process of foreign attachment, goods belonging to any person might have been sequestered without notice to the owner, and detained from him by any person who was willing to allege in legal form in a writ that they were the property of his debtor; and the owner might thus have been compelled to remain out of possession thereof until the final determination of one or more actions at law, in which he was not interested as a party and the progress of which he could not hasten.

In that year an additional act was passed, which provides, so far as this case is concerned, that " whenever any person, having in his hands the goods of another, shall refuse to deliver to him such goods on the alleged ground that he is the garnishee in a process of foreign attachment levied upon such goods, the person to whom such refusal of delivery has been made may institute his bill in equity in the nature of a bill of interpleader against the person making the refusal, the other parties in said process of foreign attachment, and any other parties in interest;" . . . and " the court before which said bill in equity shall be brought shall have full power to decide to whom such goods belong, what disposition shall be made of the same, and all other matters connected with said proceeding that may be proper to do justice between the parties."

This act proceeds upon the idea that a creditor has instituted an action at law against his debtor in due form, in a court of competent jurisdiction, and, by way of security, has detained in the hands of a garnishee the goods of a third person by process of foreign attachment; and that the garnishee justifies himself in witholding them from the owner after his demand therefor, by this act of the creditor; and it enables the owner, placed in this condition, to summon the creditor, the debtor, and the garnishee, from the court of law, to interplead each with the other and with himself

in a court of equity; which court, in the comprehensive lan-
guage óf the act, has "full power to decide to whom the
goods belong, what disposition shall be made of the same,
and all other matters connected with said proceeding, that
may be proper to do justice between the parties."

Thus, a court of equity is authorized under certain cir-
cumstances to assume jurisdiction over, and determine, a
controversy actually pending in a court of law, and in which
that court had full power to render final judgment; and, in
a particular case, the act modifies the ordinary mode of pro-
ceeding with actions at law by the introduction of a form of
equitable relief of its own creation.

The petitioner, finding himself in a position which entitled
him to this form of relief, brought this petition under the
act in question.

But the respondents argue that, after thus summoning the
parties to the garnishee process into that court, the petition-
er was bound to go further, and appear in the cause in the
court of the justice of the peace, and there defend his prop-
erty from the attack of Whiting, or plead the pendency of
this petition ; and that, having failed to do either, he is
entitled to no relief.

From the act of 1854 the petitioner derives his right to be
in the court of equity and to call there these respondents
and the parties to the action at law from their chosen forum.
We look therefore at the language of that act for instruction
as to what it demands from the person who would avail him-
self of its provisions. He is required simply to institute
his bill in equity. This the petitioner has done ; and while
the *scire facias* was pending before the justice of the peace,
and of course before the rights of the parties had ripened
into judgment, he caused a copy of his petition and of the
summons thereto appended to be duly and legally served
upon the parties to the original suit, including the respond-
ents, the garnishees therein. Having complied with the
demands of the statute, we think we have no right to impose
upon him additional requirements as the price of the privi-
lege of being in the court of equity.

And we entertain no doubt either as to the power or the intent of the act to suspend the proceedings before the justice of the peace. And we think that the act of service of the petition, in contemplation of law produced this effect; transferred the controversy and the parties thereto to the court of equity ; gave them legal knowledge that the petitioner had brought the statute in question to bear upon them; that there had been a consequent change of forum ; and constituted perfect legal notice to them to suspend the prosecution of their action before the justice of the peace until the court of equity should by its final decree do justice to all parties ; leaving upon each the burden of defending himself from any attempt on the part of either of the others to obtain thereafter a judgment against him in this matter, by any other process than that authorized, or in any other court than that opened by this act.

We cannot see that the repetition of this in the form of a plea in bar, would add any thing to the legal effectiveness of the summons.

After the petitioner had instituted this petition, Whiting, the creditor, disregarding it, obtained judgment in the court of the justice of the peace, upon the *scire facias*, with the knowledge of the respondents, and enforced the same against them ; and the respondents argue that it was in equity the duty of the petitioner to protect them therefrom by an injunction at his own cost.

The petitioner was the owner of the goods ; the record does not show that they were placed in the possession of the respondents by him or any agent of his ; they took them into their care upon the request of some person for their own advantage, for the profit which would accrue to them upon the transportation of the goods from New Britain to New London. Two persons, strangers to the petitioner, engaged in a controversy with each other and entangled the respondents therein as the holders of the goods. All that happened to them thereafter resulted from this cause. The petitioner neither invited nor forced them into the position which they occupied. They received from him legal notice

of the institution of this petition; from that time legal knowledge of the effect thereof upon the parties to the action before the justice, and upon the action itself, is to be imputed to them; the door of the court of equity would open as easily to them as to the petitioner; and as a rule, when one person has cause to apprehend that another is about to wrong him by the inequitable use of legal process, he who is in peril invokes for himself and at his own expense the protection of an injunction; but the respondents made no effort in this direction.

All persons transacting business are liable to be made parties to legal controversies springing therefrom. This is a well known risk incident to all business. We see no reason why this petitioner should be compelled to assume this risk in behalf of the respondents or pay the expense of protecting them, in a transaction undertaken for their own profit, from a danger springing from the act of a stranger.

The respondents are spoken of as an innocent and disinterested party, forced into this matter by the foreign attachment laws of this state. This describes the position of every garnishee; nevertheless, he cannot always safely sit still and permit the proceedings to take their course; he is frequently put to expense in relieving himself from responsibility.

We think the statute was passed for the purpose of bringing the tripartite contest between the owner of goods, the creditor, and the garnishee, with its various issues, into a court authorized to determine all of them by one comprehensive judgment. From the fact that the owner alone may call it into action, and that it is in the form of a permission to, and not in that of an obligation upon him, we infer that it was designed primarily for his benefit. If however, by the use of it, he necessarily draws upon himself the burden and cost of defending, by injunction, against each of the parties to the action at law, whenever and wherever one of them threatens a misuse of legal process to his injury, then is the statute a snare.

The respondents also argue that the act applies only to

cases pending in the higher courts; that the legislature did not intend thereby to reach cases before a justice of the peace. But its language is general. We find in it no suggestion of any exception or limitation.

We find no error in the decree of the Court of Common Pleas, and it is affirmed.

In this opinion PARK, C. J., and CARPENTER, J., concurred. FOSTER and PHELPS, Js., dissented as to the views expressed with regard to the effect of the proceedings in equity upon the proceedings at law.