**SHURLAND ROBIN DEMERGUE BELL and/or Underwriters of Lloyd's, London**

v.

**NUTMEG AIRWAYS CORPORATION et al.**

Civ. No. H–74–211.

United States District Court, D. Connecticut.

Feb. 10, 1976.

George D. Royster, Jr., Halloran, Sage, Phelon & Hagarty, Hartford, Conn., for plaintiff.

Edward T. Lynch, Jr., New Britain, Conn., Robert M. Dombroff, Mark S. Shipman and Ellen S. Levine, Schatz & Schatz, Armand A. Korzenik, Hartford, Conn., A. Dennis Terrell, Newark, N. J., Paul Behling and Arnold Scholovitz, Meriden, Conn., for defendants.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

BLUMENFELD, District Judge.

This is a statutory interpleader action brought by Shurland Robin Demergue Bell, more commonly known as Underwriters of Lloyd's, London. The subject matter of this suit is the proceeds of an insurance policy issued by the plaintiff to one of the defendants, Nutmeg Airways Corporation (Nutmeg). That policy insured a Nutmeg helicopter stored at the Mercer County Airport in West Trenton, New Jersey.

On April 15, 1969, the helicopter was destroyed in a fire. Nutmeg and Lloyd's agreed upon a settlement figure of $44,000, but, before it paid over that amount, Lloyd's was served with notice of claims upon the settlement fund by two additional parties, amounting to $21,394.59. Lloyd's therefore brought

this action to determine the rights of the various parties to the disputed amount. It paid the sum of $22,237.52, the disputed amount plus accrued interest, into the registry of this court and the remainder of the settlement to Nutmeg.

The defendants in this action are Nutmeg Airways Corporation, the payee of the policy; Richard Futtner, the president of Nutmeg; Northeast Helicopters, Inc. (Northeast) and John Ryan, creditors of Nutmeg who have served garnishments on the plaintiff; and the Ronson Corporation, a New Jersey Corporation which has served the plaintiff with notice of a mechanics lien for services to the insured helicopter prior to the fire. In addition, Solomon & Brown, a Connecticut law firm, has filed an answer claiming an interest in the fund arising out of its representation of Nutmeg in earlier litigation.

Three of the defendants, Nutmeg, Northeast and John Ryan, have moved for summary judgment pursuant to Rule 56(b), Fed.R.Civ.P. After oral argument and a full examination of the affidavits submitted by the parties, this court has determined that there exists no genuine issue as to any material fact. Thus, this is a proper case for summary judgment.

## I. *Jurisdiction*

This action satisfies the jurisdictional requirements of the interpleader statute, 28 U.S.C. § 1335. The amount in controversy exceeds $500. The requirement that at least two of the adverse claimants be of diverse citizenship is also satisfied.[1] Finally, the plaintiff has paid the amount into the registry of this court, as required by § 1335(a)(2).

## II. *The Claim of Northeast Helicopters*

A. The validity of Northeast's garnishment.

Northeast, through its trustee, filed an action against Nutmeg in the Court of Common Pleas in Hartford, Connecticut, on December 9, 1970. At the commencement of that action Northeast filed a garnishment with Lloyd's, pursuant to Conn.Gen.Stat.Ann. §§ 52–281 and 52–329. On January 12, 1973, in an unrelated action in which Northeast was a party, this court declared § 52–329 unconstitutional. *Lynch v. Household Finance Corp.,* 360 F.Supp. 720 (D.Conn.1973).

As a result of that decision Nutmeg made two attempts to have the garnishment set aside. In May 1973, Nutmeg filed a motion to have the attorneys for Northeast held in contempt for violating the injunction entered in *Lynch.* However, Nutmeg withdrew the motion after oral argument.

On June 20, 1973, Nutmeg filed a motion in the Court of Common Pleas seeking to have the garnishment order set aside. This motion was denied in an order dated July 13, 1973.

On July 2, 1974, while the garnishment was still in effect, Lloyd's began this action, and, as required by statute, paid the money into court. On August 15, 1974, a stipulated judgment in favor of Northeast in the amount of $9,000 was entered by the Court of Common Pleas. Northeast, however, made no attempt to comply with Conn.Gen.Stat.Ann. § 52–328, which requires a creditor to perfect his garnishment lien by filing a demand with the garnishee within 60 days of the judgment. Despite this failure, Northeast has moved for summary judgment for $9,000 and its costs.

This motion is opposed by Nutmeg, which seeks, once again, to challenge the constitutionality of the original garnishment. Nutmeg also claims that the garnishment lien is no longer valid because Northeast failed to comply with Conn. Gen.Stat.Ann. § 52–278g (1975 Supp.),[2]

---

1. Nutmeg Airways Corporation is a Connecticut corporation; Northeast Helicopters, Inc. is a New York corporation; John Ryan is a citizen of New Jersey.

2. Conn.Gen.Stat.Ann. § 52–278g (1975 Supp.) reads:

"A plaintiff who has secured a prejudgment remedy prior to May 30, 1973 may make a motion to the court in which such action is pending for a hearing as set forth in section 52–278d with notice thereof to the defendant or his attorney. If the court,

which provided a method whereby creditors who had secured prejudgment remedies prior to May 30, 1973, could validate them by having a probable cause hearing.

These objections are easily answered. The first response is that the motion attacking the garnishment brought by Nutmeg in the Court of Common Pleas on June 20, 1973 satisfied the requirements of § 52–278g. Although the motion was not brought by the plaintiff in the action, as the statute requires, Nutmeg received a hearing by a neutral magistrate, who upheld the validity of the garnishment, which is all that the Constitution requires. *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 607, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

An even more fundamental response, however, is that Nutmeg has stipulated to the judgment and cannot now contend that there was not probable cause for the claim. It borders on the frivolous for Nutmeg to attempt to use that claim to deprive Northeast of the benefits of a judgment to which Nutmeg has stipulated. If Nutmeg suffered some separate harm due to the use of an unconstitutional remedy, it is free to sue to recover for that injury.

## B. The effect of this interpleader action on the incomplete garnishment lien.

A more serious question is raised by the fact that Northeast never executed on its judgment in the manner prescribed by Conn.Gen.Stat.Ann. § 52–328.[3] The Connecticut Supreme Court has held that a failure to comply with the statute extinguishes the attachment lien and prevents its merger into a judgment lien. *Bradbury v. Wodjenski,* 159 Conn. 366, 269 A.2d 271 (1970).

Northeast presents three arguments why its non-compliance with the statute should be excused. It points out, first, that no execution could have been made because the money had already been paid into the registry of this court. 30 Am.Jur.2d, *Executions* § 191 (1967). *But see New Haven Saw-Mill Co. v. Fowler,* 28 Conn. 103 (1859). It also cites *Burrows v. Stoddard,* 3 Conn. 431 (1820), which held that when the garnishee had improperly sold the property, and thereby put it out of the reach of execution by the garnishor, it was not necessary for the garnishor to have made a demand which would have been futile.[4] This argument is not persuasive.

upon consideration of the facts before it, finds that the plaintiff has shown probable cause to sustain the validity of his claim, such prejudgment remedy secured shall be effective from the date of such hearing and an order to that effect shall be issued by the court."

3. Conn.Gen.Stat.Ann. § 52–328 reads:

"No estate which has been attached shall be held to respond to the judgment obtained in the suit, either against the debtor or any other creditor, unless the judgment creditor takes out an execution and has it levied on the personal estate attached, or demand made on the garnishee in cases of foreign attachment, within sixty days after final judgment, or levied on the real estate attached, and the same appraised, and the execution and proceedings thereon recorded, within four months after such judgment; or, if such goods or estate is encumbered by any prior attachment, unless the execution is so levied within the respective times aforesaid after such encumbrance has been removed; except only in case of a foreign at-

tachment against an executor, administrator or trustee in insolvency, upon whom demand shall be made within the times limited in sections 52–389, 52–390 and 52–391. In determining said periods within which the attaching creditor is so required to take out and levy execution, any time during which the issue or levy of an execution may be prevented or stayed by the pendency of a writ of error, or by an injunction or other legal stay of execution, shall be excluded from the computation."

4. In *Burrows* the court stated:

"Why make a demand, when the property had been forcibly taken away, and sold by the defendant, before any demand was necessary? The law never requires an unnecessary act to be done. The right of the plaintiff to recover, accrued, when the property was taken from him; nor could it be affected, by not having done an act, which, to say the least of it, would have been a useless one."

3 Conn. at 435.

In the first place, § 52–328 requires that demand be made on the garnishee, not on the holder of the property. Furthermore, *Burrows* is not viable precedent in Connecticut. *Sanford v. Pond,* 37 Conn. 588, 594–95 (1851).[5]

Second, Northeast argues that the last sentence of § 52–328 [6] should be interpreted to include an interpleader action as an "other legal stay of execution," and that therefore the 60-day period should be considered to have been tolled by the filing of this action. This argument has some support in Connecticut law. *See Darrow v. Adams Express Co.,* 41 Conn. 525 (1874).

■ Finally, Northeast argues that its answer in this action should be construed as the "demand" required by § 52–328.

An analogous situation was presented in *Central Trust Co. v. Worcester Cycle Mfg. Co.,* 114 F. 659, 663–64 (C.C.Conn. 1902). There Judge Townshend held that when the attached property was surrendered to a receiver with a stipulation that the creditor would not be deprived of his rights, the failure of the creditor to serve the demand required by the statute was excused. I think that the rule of that case applies here. The payment by Lloyd's to this court, combined with the interpleader complaint, served as an acknowledgment of the claims of the defendants, and a request to this court to determine the validity and priority of those claims. Adequate notice was thereby given to each of the parties who alleged an interest in the fund. No further purpose would have been served if Northeast had served

Lloyd's or the clerk of this court with a demand following the judgment. I conclude that under those circumstances the validity of Northeast's lien was not destroyed by its failure to comply with the provision of § 52–328.[7] *Cf. Armour Fertilizer Works v. Sanders,* 63 F.2d 902 (5th Cir. 1933), *aff'd,* 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206 (1934).

It is held, therefore, that Northeast has a valid claim to the fund to the extent of $9,000, plus costs and interest from August 15, 1974, the date of its state court judgment.

## III. *The claim of John Ryan*

■ John Ryan filed an action against Nutmeg in the Superior Court of Hartford County on September 24, 1969. Garnishment was served on Lloyd's incident to that suit on September 30, 1969. On June 30, 1972, judgment was awarded in favor of Ryan against Nutmeg, in the amount of $6,884.50 damages and $166.20 costs.

On February 28, 1974, John Ryan commenced a new action against Nutmeg, and its president Richard Futtner, in the Court of Common Pleas for Hartford County. After notice and hearing, a writ of garnishment was issued by that court and served on Lloyd's on March 6, 1974. On September 13, 1974, judgment was entered in favor of John Ryan against both defendants in the amount of $7,945.68 damages and $280 costs. No attempt has been made, however, to make the statutorily required demand after this second judgment.

---

5.  "The case of *Burrows v. Stoddard* was never weighty as an authority; it was doubted by Church, J., in giving the opinion of the court in *Gates v. Bushnell,* 9 Conn. [530] 534, and Judge Peters, in the same case, p. 536, expressed himself with judicial emphasis, as 'glad to see *Burrows v. Stoddard* shaken, and he thought it would not survive another concussion.' We are not inclined to vindicate the doctrine of that case."

    37 Conn. at 595.

6.  "In determining said periods within which the attaching creditor is so required to take

out and levy execution, any time during which the issue or levy of an execution may be prevented or stayed by the pendency of a writ of error, or by an injunction or other legal stay of execution, shall be excluded from the computation."

7.  *Bradbury v. Wodjenski,* 159 Conn. 366, 269 A.2d 271 (1970) is not *contra.* In that case the interpleader action was filed *after* the 60-day statutory period had already run.

In its own motion for summary judgment, Nutmeg contends merely that "John Ryan does not have a valid judgment." In its answer, Nutmeg alleged on information and, belief that Ryan's judgment was obtained without personal jurisdiction over the defendants. Nutmeg has not, however, moved to set aside the state court judgment. Furthermore, it has not submitted anything to support this contention in response to John Ryan's motion, and mere conclusory statements are not sufficient to defeat a motion for summary judgment.

Ryan's failure to make the demand required by Conn.Gen.Stat.Ann. § 52–328 is excused for the reasons set out in the discussion of the claim of Northeast.

Judgment will enter in favor of John Ryan in the amount of $8,225.88, plus costs and interest from September 13, 1974, the date of its second state court judgment. Since the fund is large enough to satisfy both the John Ryan and Northeast claims, there is no need to determine priority.

### IV. *The claim of Nutmeg Airways Corporation*

The third motion for summary judgment has been filed by Nutmeg Airways. As payee of the insurance policy, Nutmeg has a claim to the entire fund. Insofar as Nutmeg seeks to foreclose the claims of Northeast and John Ryan, its motion for summary judgment is denied for the reasons set out above.

Nutmeg also seeks to foreclose the claims of the two remaining defendants, Solomon & Brown and the Ronson Corporation. It alleges that Solomon & Brown never asserted an interest in the fund itself, and that the mechanics's lien claimed by the Ronson Corporation has been declared invalid by a New Jersey court. Neither Ronson nor Solomon & Brown responded to the motion for summary judgment or appeared at the hearing on the motion. Therefore, judgment will be entered in favor of Nutmeg and against them. Rule 56(e), Fed.R.Civ.P.

While the complaint alleges that Richard Futtner, the president of Nutmeg, may have some personal claim against the fund separate from that of Nutmeg, he has not attempted to assert such a claim at any time in this action. Consequently, the judgment to the balance of the fund, after the claims of Northeast and John Ryan had been satisfied, shall be entered only in favor of the defendant Nutmeg Airways Corporation, as it was the sole payee on the insurance policy.

This ruling disposes of the plaintiff's claim for interpleader. All that remains in this action is the counterclaim of the defendant Nutmeg Airways against the plaintiff for wrongfully withholding the settlement of the insurance policy. *Royal School Laboratories, Inc. v. Town of Watertown*, 358 F.2d 813, 815 (2d Cir. 1966). That claim will be set down for trial in the near future to put an end to this protracted litigation.

It is

So ordered.