NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 17

No. 2016-207

| | |
|---|---|
| H&E Equipment Services, Inc. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Civil Division |
| | |
| Cassani Electric, Inc. & Nicholas Cassani | November Term, 2016 |

Thomas Z. Carlson, J.

Tavian M. Mayer of Mayer & Mayer, South Royalton, for Plaintiff-Appellee.

Joshua Martin, St. Albans, for Defendant-Appellant.


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.    **SKOGLUND, J.**   Defendant Nicholas Cassani appeals from the trial court's order granting summary judgment to plaintiff H&E Equipment Services, Inc. on its complaint to collect on a 2001 Arizona judgment.  Defendant argues that the action is time-barred under 12 V.S.A. § 506.  Alternatively, he contends that there is a material dispute of fact as to whether the Arizona court had personal jurisdiction over him at the time it entered its judgment.  We affirm.

¶ 2.    The record indicates the following.  In February 2015, H&E filed a complaint against defendant[1] in Vermont, seeking to collect an unpaid judgment from the State of Arizona in the amount of $56,016.22 plus interest.  H&E attached to its complaint a "judgment renewal affidavit" from Arizona dated February 2011.  Under Arizona law, a judgment renewal affidavit

---

[1]  Cassani Electric, Inc. was originally named as a defendant as well, but it was dismissed at H&E's request.

renews and revives a judgment to the extent of the balance still owed. See A.R.S. § 12-1612 (setting forth requirements and process for filing judgment renewal affidavit and stating that filing of such affidavit "shall renew and revive the judgment to the extent of the balance shown due in the affidavit"). H&E originally obtained a default judgment against defendant in Arizona in 2001, and twice renewed and revived its judgment under Arizona law.

¶ 3.    Defendant moved to dismiss H&E's complaint, arguing that the suit was barred under 12 V.S.A. § 506.[2] That statute provides that "[a]ctions on judgments and actions for the renewal or revival of judgments shall be brought by filing a new and independent action on the judgment within eight years after the rendition of the judgment, and not after." Id. Defendant appeared to argue that the original 2001 Arizona judgment—rather than the 2011 renewed and revived judgment—was the controlling "judgment" for purposes of § 506, and thus, the complaint was untimely. Following a hearing, the court denied defendant's motion. It found that H&E properly renewed its judgment in Arizona under Arizona law, which governed the action at that time, and 12 V.S.A. § 506 did not apply to this process. Defendant moved for reconsideration, which the court denied.

¶ 4.    H&E moved for summary judgment in December 2015. Citing Wursthaus, Inc. v. Cerreta, it argued that the Arizona judgment was "entitled to full faith and credit in the absence of a showing that that court lacked jurisdiction or acted to deprive defendant of a reasonable opportunity to be heard." 149 Vt. 54, 58, 539 A.2d 534, 537 (1987); see also Restatement (Second) of Conflict of Laws § 104 (1971) ("A judgment rendered without judicial jurisdiction or without adequate notice or adequate opportunity to be heard will not be recognized or enforced in the other states."). H&E explained that defendant had the heavy burden of showing that the judgment should not be enforced. See Wursthaus, 149 Vt. at 55, 539 A.2d at 535 ("The burden of undermining the

---

[2]    Defendant also filed an answer and a counterclaim, asserting that H&E committed consumer fraud by attempting to collect an invalid debt. The court rejected the argument that the debt was invalid, and it granted H&E's motion to dismiss the counterclaim.

2

decree of a sister state rests heavily upon the one who assails such decree.") (citing <u>Cook v. Cook</u>, 342 U.S. 126, 128 (1951) (same)).

¶ 5. H&E asserted that the undisputed facts, as recited by the Arizona court on the initial judgment order, established that defendant had been served by personal delivery of the summons and complaint in Arizona and that he failed to appear or answer. H&E then obtained a default judgment in March 2001 for $25,981.19, plus interest at the rate of 10% per annum. As provided by Arizona law, H&E renewed its judgment before the Arizona statute of limitations period expired by filing a judgment renewal affidavit in the Maricopa County Superior Court in March 2006, and again in February 2011. Given these facts, H&E argued that the judgment should be enforced and that it was entitled to summary judgment in its favor.

¶ 6. The court granted summary judgment to H&E without providing defendant a full thirty days to respond, and defendant moved to set aside the decision on this basis. Defendant also opposed H&E's summary judgment motion. Defendant argued that the Arizona judgment should not be enforced because he was not properly served with the complaint in the underlying Arizona action. He provided a sworn statement to this effect and argued that his affidavit created a material dispute of fact. Even if the Arizona court had jurisdiction over him, defendant asserted that the judgment could not be enforced in Vermont under 12 V.S.A. § 506 because more than eight years had elapsed from the original judgment. Defendant made cursory references to other defenses as well.

¶ 7. The court agreed with defendant that it had granted summary judgment prematurely and set aside its judgment. It found, however, that defendant's opposition boiled down to an argument that he was not served in the Arizona proceeding and therefore that the Arizona judgment should not be recognized by a Vermont court.[3] This argument rested on defendant's sworn

---

[3] The court noted that while defendant also claimed that his obligation was discharged in bankruptcy, his affidavit in opposition to the motion for summary judgment was silent as to that alleged bankruptcy and defendant failed to produce any record of any bankruptcy proceeding that would support such a defense. The court also reiterated its conclusion that the Arizona judgment

statement to this effect. The court recognized that "a 'judgment' rendered without notice or appearance is no judgment at all." In re Hanrahan's Will, 109 Vt. 108, 120, 194 A. 471, 477 (1937). Here, however, the judgment itself recited that defendant was "regularly and properly served," and the court found that this recital was entitled to as much full faith and credit as the judgment's dollar amount. See Wursthaus, 149 Vt. at 58, 539 A.2d at 537 (recognizing that under long established precedent, foreign judgment "is entitled to full faith and credit in the absence of a showing that that court lacked jurisdiction or acted to deprive defendant of a reasonable opportunity to be heard").

¶ 8.    Given the Arizona judgment's recital that defendant was in fact served, and the holding in Wursthaus, the court found that defendant had the burden of making a reasonable showing that he was not actually served beyond his mere assertion to this effect. The court explained that Arizona presumably maintained court records dating back to 2001 when the original judgment was issued. Defendant had asked the court for additional opportunity to offer evidence "thus far NOT presented," and pursuant to V.R.C.P. 56(e), the court allowed defendant sixty days to obtain and provide the court with admissible documentary evidence to show that he was not in fact "regularly and properly served" as recited in the Arizona judgment. Otherwise, citing V.R.C.P. 56(c), the court indicated that it might renew its grant of summary judgment based on defendant's failure to support his factual position with anything more than a bare assertion. The court recognized that its function was not to find facts on a motion for summary judgment. At the same time, however, it was mindful that there remained only a very narrow issued to be decided, whether by summary judgment or after hearing, and the court was not yet convinced that defendant met his burden of showing a genuine issue of material fact.

¶ 9.    Defendant did not file anything with the court during the sixty-day period. In April 2016, H&E renewed its motion for summary judgment. Defendant did not respond to the renewed

---

had been renewed in accordance with Arizona law such that the action brought in Vermont was timely under 12 V.S.A. § 506.

4

motion. In May 2016, the court granted H&E's request and entered judgment in H&E's favor for the amount owed. This appeal followed.

¶ 10. We review the trial court's summary judgment decision de novo, using the same standard as the trial court. Buxton v. Springfield Lodge No. 679, Loyal Order of Moose, Inc., 2014 VT 52, ¶ 2, 196 Vt. 486, 99 A.3d 171. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). "In reviewing the facts, we give the nonmoving party . . . the benefit of all reasonable doubts and inferences." Buxton, 2014 VT 52, ¶ 2 (quotation omitted). We conclude that summary judgment was properly granted to H&E here.

¶ 11. We begin with defendant's assertion that this action is time-barred under 12 V.S.A. § 506. Defendant reads the statute to require that any action on a judgment must be brought within eight years from the date of the "original judgment." Defendant cites Nelson v. Russo, 2008 VT 66, ¶ 9, 184 Vt. 550, 956 A.2d 1117 (mem.), and Ayer v. Hemingway, 2013 VT 37, 193 Vt. 610, 73 A.3d 673, as support for this proposition. Based on this interpretation, defendant maintains that the statute bars the action here because "[w]hen a cause of action is brought in Vermont, Vermont law determines the accrual date and the limitations period." Marine Midland Bank v. Bicknell, 2004 VT 25, ¶ 7, 176 Vt. 389, 848 A.2d 1134.

¶ 12. We reject defendant's interpretation of 12 V.S.A. § 506 because it would lead to absurd results. See, e.g., State v. Hurley, 2015 VT 46, ¶ 13, 198 Vt. 552, 117 A.3d 433 ("[W]e construe statutes to avoid unreasonable consequences that are at odds with the Legislature's apparent intent."). Section 506 provides that "[a]ctions on judgments and actions for the renewal or revival of judgments shall be brought by filing a new and independent action on the judgment within eight years after the rendition of the judgment, and not after." The phrase "rendition of the judgment" is not limited to the "original" judgment, as defendant posits. Section 506 specifically provides for the renewal of judgments; obviously, renewed judgments may be enforced or there would be no point in renewing them. It is evident that the Legislature intended the words

5

"rendition of the judgment" to encompass renewed judgments and that when a judgment is renewed—in Vermont or elsewhere under another state's laws—the date of the renewed judgment is controlling for purposes of 12 V.S.A. § 506. See Koerber v. Middlesex Coll., 136 Vt. 4, 9, 383 A.2d 1054, 1057 (1978) (recognizing that "if the statute of limitation period has almost run upon the judgment, the judgment creditor can start the limitation period anew by bringing an action upon the judgment and obtaining a new judgment" (citation omitted)); see also Watkins v. Conway, 385 U.S. 188, 188-190 (1966) (per curiam) (where state statute required all suits upon foreign judgments to "be brought within five years after such judgment shall have been obtained," relevant date was "not the date of the original judgment, but rather . . . the date of the latest revival of the judgment").

¶ 13.   Our holdings in Ayer and Russo are not to the contrary. As an initial matter, neither involved the enforcement of a renewed judgment or the enforcement of a foreign judgment. In Ayer, we considered whether the statute of limitations in 12 V.S.A. § 506 began to run from the date of the plaintiff's 2001 judgment or from a 2006 stipulated amended order. The latter order simply stated the amount of the judgment that remained due. The plaintiffs argued that the 2006 order was a new "final judgment" from which the statute of limitations period began to run. We rejected this argument, finding the 2001 decision controlling because it had ended the litigation between the parties, while the 2006 decision merely set forth an agreed-upon payment plan for the 2001 debt. Ayer, 2013 VT 37, ¶ 18. We explained that the statute did not contemplate that a new limitations period would begin each time the court issued a post-judgment order of this kind. Id. ¶ 19. We recognized that the statute expressly allowed for the renewal of judgments, and required that Vermont judgments be renewed through the filing of a " 'new . . . and independent suit commenced in accordance with [V.R.C.P.] 3.' " Id. ¶ 15 (quoting Nelson, 2008 VT 66, ¶ 6). In Nelson, we concluded that an earlier version of 12 V.S.A. § 506 implicitly required that a plaintiff renew his Vermont judgment by filing an independent action, a requirement now expressly stated in § 506. See Nelson, 2008 VT 66, ¶ 10. Nothing in these decisions suggests that

the eight-year limitation period continues to run on an "original" judgment, even when the judgment has been properly renewed. These cases do not address, nor do they hold, that only "original" judgments—and not renewed judgments—can be enforced.

¶ 14. We did not hold otherwise in Marine Midland, cited by defendant. In that case, a party sought to enforce a 1991 New York judgment in Vermont by filing an action on the judgment in Vermont in 2000. We recognized that "Vermont law governs all procedural issues in actions to enforce foreign judgments in Vermont courts." 2004 VT 25, ¶ 7 (citing Wursthaus, 149 Vt. at 55-56 n.*, 539 A.2d at 535 n.* and Restatement (Second) of Conflict of Laws § 99 (1971) ("The local law of the forum determines the methods by which a judgment of another state is enforced.")). In other words, "[w]hen a cause of action is brought in Vermont, Vermont law determines the accrual date and the limitations period." Marine Midland, 2004 VT 25, ¶ 8. Applying these basic propositions, we concluded that the action was time-barred under 12 V.S.A. § 506 because it was initiated more than eight years after the date of the New York judgment sought to be enforced. It should be noted that the judgment in Marine Midland had not been "renewed" or "revived" in New York State because New York barred actions on judgment while execution was available in order to prevent "needless and vexatious litigation." 2004 VT 25, ¶ 7. Thus, the decision is not relevant to deciding the issue presented in the case at bar.

¶ 15. Our conclusion in the instant case implements the basic propositions discussed above. Under Vermont law, judgments, including renewed judgments, must be acted upon—or renewed again—within eight years of the date they were issued. The Arizona judgment here was renewed in 2011 and H&E brought this action in 2015, well within the eight-year limitation period set forth in 12 V.S.A. § 506. The action is not time-barred.

¶ 16. Defendant also appears to suggest that a party who has obtained a judgment in Arizona cannot renew such judgment in Arizona but must instead renew the judgment in Vermont before it can be enforced. We find no support for this suggestion. There would be no reason to renew a foreign judgment in Vermont unless and until a judgment debtor resides there, which

7

could occur well outside the eight-year window. Not only is this approach illogical, it is also inconsistent with the requirement that we give full faith and credit to foreign judgments. See U.S. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."); see also Union Nat'l Bank of Wichita, Kan. v. Lamb, 337 U.S. 38, 42 (1949) (recognizing that forum state cannot defeat foreign judgment "because it was obtained by a procedure hostile to or inconsistent with that of the forum or because it was based on a cause of action which the forum itself would not have recognized," and concluding that "[a]ny other result would defeat the aim of the Full Faith and Credit Clause").

¶ 17.    In Union National Bank, the U.S. Supreme Court considered a party's suit on a Colorado judgment in Missouri. The Colorado judgment was obtained in 1927 and revived in Colorado in 1945. Missouri law limited the life of judgments to ten years after their original rendition or ten years after their revival and did not allow judgments to be revived after ten years from their rendition. The Missouri Supreme Court refused to enforce the judgment because the original judgment under Missouri's law could not have been revived in 1945. The Supreme Court reversed, relying on case law that established that "once the court of the sister State had jurisdiction over the parties and of the subject matter its judgment was valid and could not be impeached in the state of the forum, even though it could not have been obtained there." 337 U.S. at 41. As that Court explained, "[a]ny other result would defeat the aim of the Full Faith and Credit Clause." Id. at 42 (recognizing that "[i]t is when a clash of policies between two states emerges that the need of the Clause is the greatest," and Clause is "designed to resolve such controversies"). "There is no room for an exception . . . where the clash of policies relates to revived judgments," as "it is the judgment that must be given full faith and credit." Id. "In neither case can its integrity be impaired, save for attacks on the jurisdiction of the court that rendered it." Id.[4]

---

[4] In reaching its conclusion, the Court noted that "[c]ases of statute of limitations against a cause of action on a judgment involve different considerations," as "[t]hey do not undermine the integrity of the judgment on which suit is brought." Union Nat'l Bank, 337 U.S. at 42-43 (citations

¶ 18. This leads us to defendant's final argument. Defendant asserts that we should not give full faith and credit to the Arizona judgment because the Arizona court lacked personal jurisdiction over him. He cites to his sworn statement that he was not served with a complaint, and argues that this created a material dispute of fact that prevented the entry of summary judgment.

¶ 19. As previously stated, "[a] sister-state judgment is normally 'entitled to full faith and credit in the absence of a showing that [the] court lacked jurisdiction or acted to deprive defendant of a reasonable opportunity to be heard.' " Lakeside Equip. Corp. v. Town of Chester, 173 Vt. 317, 321, 795 A.2d 1174, 1178 (2002) (quoting Wursthaus, 149 Vt. at 58, 539 A.2d at 537) (recognizing that party can defeat enforcement of foreign default judgment by showing that judgment was issued by court lacking personal jurisdiction); see also 18 C. Wright et al., Fed. Prac. & Proc. § 4430, at 292 (2d ed. 1981) ("[A] defendant who makes no appearance whatever remains free to challenge a default judgment for want of personal jurisdiction."). The Arizona judgment is presumptively valid, and defendant had the "heavy burden" of undermining it. Hall v. McCormick, 154 Vt. 592, 595, 580 A.2d 968, 970 (1990); Cook, 342 U.S. at 128 (burden of undermining sister-state decree rests heavily upon assailant); see also Lakeside Equip. Corp., 173 Vt. at 322, 795 A.2d at 1179 (recognizing that "[a]lthough the burden of overcoming the default judgment rests with the party attacking it, where the issue of personal jurisdiction is resolved on summary judgment, the moving party retains the burden of establishing the absence of a genuine issue of material fact and entitlement to prevail as a matter of law" (citation omitted)). "If the defendant in the action to domesticate the foreign default judgment ultimately fails to meet its burden of demonstrating that the judgment is jurisdictionally defective, any challenge on the merits of the lawsuit is foreclosed." Id. (citing 18 C. Wright et al., supra, § 4430, at 291 for proposition

omitted). As previously discussed, we have rejected defendant's interpretation of 12 V.S.A. § 506, Vermont's statute of limitations.

that "[o]bjections to personal jurisdiction remain open to the defendant who remains entirely aloof from the original proceeding, but if it is later concluded that personal jurisdiction existed the merits of the action are foreclosed unless relief can be had from the default judgment").

¶ 20.    In this case, we agree with the trial court that defendant failed to establish that a genuine dispute of material fact existed as to whether he was served with the Arizona complaint. Certainly, under other circumstances, a party's affidavit might suffice to create a dispute of material fact sufficient to defeat summary judgment.  In this case, however, the Arizona judgment was presumptively valid and the judgment recited that defendant had been served with the complaint.  Defendant's bald assertion concerning lack of service was insufficient to create a genuine factual dispute regarding service.  See In re Shenandoah LLC, 2011 VT 68, ¶ 17, 190 Vt. 149, 27 A.3d 1078 (stating that, in granting summary judgment, court was not bound by bald assertions contained in party's affidavit where party failed to submit available evidence to support such assertions); Lussier v. Truax, 161 Vt. 611, 612, 643 A.2d 843, 844 (1993) (mem.) (reaching similar conclusion) (citing Cohen v. Ayers, 449 F. Supp. 298, 321 (N.D. Ill. 1978) (affidavit opposing summary judgment "may be disregarded if it contains conclusions of law or of ultimate fact")); see also Shurland Robin Demergue Bell v. Nutmeg Airways Corp., 407 F. Supp. 1254, 1259 (D. Conn. 1976) (holding that mere conclusory statements that claimant did not have valid judgment and that judgment had been obtained without personal jurisdiction over defendants were insufficient to defeat motion for summary judgment against debtor, which had not moved to set aside the state court judgment); 10B C. Wright et al., Fed. Prac. & Proc. § 2738, at 346-56 (4th ed. 2017) ("[U]ltimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary-judgment motion.").

¶ 21.    The trial court made clear to defendant that it required more than his mere assertion to draw the judgment into question, and it provided him the opportunity to provide additional evidence, such as Arizona court records, to support his contention regarding service.  See V.R.C.P. 56(e) (explaining that if "party fails to properly support assertion of fact or fails to properly address

10

another party's assertion of fact as required by Rule 56(c)," trial court may, among other options, give party "opportunity to properly support or address the fact," or "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it"). Defendant failed to file any additional materials. While H&E apparently did obtain the return-of-service forms from Arizona, those forms were not submitted to the trial court and they are not part of the record on appeal. Thus, we do not consider these documents or defendant's challenges to these documents. See Hoover v. Hoover, 171 Vt. 256, 258, 764 A.2d 1192, 1193 (2000) (explaining that Supreme Court's review on appeal is confined to record and evidence adduced at trial and Court cannot consider facts outside record); see also Buxton, 2014 VT 52, ¶ 6 n.2 (holding that where party did not submit materials at summary judgment stage, this Court could not consider them in reviewing trial court's summary judgment decision). We conclude that defendant failed to put forth sufficient evidence to rebut the presumptively valid foreign judgment or draw into question the express finding by the Arizona court that he was properly served. We thus conclude that summary judgment was properly granted to H&E.

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 22. **ROBINSON, J., concurring in part, dissenting in part.** The majority suggests that testimony about a critical fact, given under oath and based on personal knowledge, is insufficient to create a dispute of material fact for purposes of summary judgment. That is a dramatic departure from well-established and universal principles of summary judgment adjudication. I dissent from the majority's holding that defendant failed to establish a genuine dispute of material fact as to whether he was served with the Arizona complaint and would reverse the trial court's summary judgment ruling on that basis.

11

¶ 23.    I agree with the majority's description of the legal framework.  Ante, ¶ 19.  The Arizona judgment in this case is entitled to full faith and credit unless defendant can show that the Arizona court lacked jurisdiction or acted to deprive defendant of a reasonable opportunity to be heard.  Lakeside Equip. Corp. v. Town of Chester, 173 Vt. 317, 321, 795 A.2d 1174, 1178 (2002).  Although the majority does not explicitly say so, implicit in the majority's description of the applicable law is the recognition that if defendant in this case does, in fact, establish that he was never served with the complaint or the ultimate judgment in the Arizona case, the Arizona judgment is not entitled to full faith and credit.  See In re Hanrahan's Will, 109 Vt. 108, 120, 194 A. 471, 477 (1937) ("[A] 'judgment' rendered without notice or appearance is no judgment at all.  It is not merely erroneous, irregular, or voidable.  Upon the plainest principles of natural justice, and under the Fourteenth Amendment, it is absolutely void.").

¶ 24.    Accordingly, the critical factual issue driving resolution of this case is: was defendant served with the complaint or final judgment in the Arizona case?  If not, H&E is not entitled to enforce the judgment in Vermont; if so, it is entitled to enforce the judgment, and defendant cannot challenge the judgment on its merits.

¶ 25.    The majority's conclusion that the record reflects no dispute of material fact on this decisive issue, ante, ¶ 20, is flatly contradicted by the record.  Defendant filed a sworn affidavit stating the following:

> I was not served with a summons or complaint in the underlying lawsuit. . . .
>
> I had no contact from plaintiff regarding the alleged debt until I was served with this lawsuit in Vermont to enforce the Arizona judgment. . . .
>
> If I had notice of the Arizona action, I would have responded and defended myself, because I had many defenses to Plaintiff's claim.

In its factfinding capacity, the trial court may conclude that plaintiff is not credible, or that his testimony is not persuasive enough to satisfy defendant's burden to overcome the presumption of validity afforded the Arizona judgment.  But I cannot fathom how, as a matter of law, defendant's

12

sworn testimony as to the critical fact at issue, based upon his own personal knowledge, does not create a disputed issue such that summary judgment is inappropriate.

¶ 26. This is not at all like the cases relied upon by the majority in which the statement claimed to give rise to a factual dispute is nothing more than a bald assertion of an ultimate fact or legal conclusion. Ante, ¶ 20. In In re Shenandoah LLC, a closely divided majority of this Court affirmed a summary judgment where the non moving party "provided no information to the court, and no actual documentation to support their conclusory statements that they had no 'control' over the Trust's activities and derived no 'benefit' from the Trust's land development activities." 2011 VT 68, ¶ 17, 190 Vt. 149, 27 A.3d 1078. The Court explained, "[i]t is well-established that ultimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary-judgment motion." Id. (quotation omitted); see also Lussier v. Truax, 161 Vt. 611, 612, 643 A.2d 843, 844 (1993) (mem.) ("[The] defendants' affidavits and documents, which for the most part consist of self-serving opinions as to the legal nature of the parties' transaction and of unrecorded or undelivered documents, are wholly insufficient to survive plaintiffs' motion for summary judgment.").

¶ 27. The relevant testimony in defendant's affidavit is neither a legal conclusion nor an assertion of ultimate fact; it establishes the critical foundational fact from which a legal conclusion may follow. It is nothing like the conclusory and unsupported statement that a judgment "was obtained without personal jurisdiction over the defendants" that a federal court held insufficient to survive summary judgment in Shurland Robin Demergue Bell v. Nutmeg Airways Corp., 407 F. Supp. 1254, 1259 (D. Conn. 1976). Instead, defendant's sworn affidavit provided evidence of a straightforward, and disputed, fact as to whether defendant was served with notice of the Arizona proceeding.

¶ 28. The trial court's decision may have been influenced in part by the fact that in a prior ruling it made clear to defendant that in addition to his offering his "word," the court expected him to secure and provide the court with Arizona court records from 2001 further supporting his claim. But the court's expectation in this regard, while perhaps an accurate reflection of its anticipated

13

expectations as a factfinder on the merits of the notice question, was not an appropriate requirement on summary judgment. Defendant was entitled to rest on his testimony, hoping the court would find him sufficiently credible to overcome the presumption that the Arizona judgment was valid, or at least to shift a burden of production to H&E.

¶ 29.    For these reasons, I respectfully dissent.

¶ 30.    I am authorized to state that Justice Dooley joins this concurrence and dissent.

_____
Associate Justice
