*State v. Kwon*, No. 289-5-15 Wncv (Teachout, J., June 28, 2017).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

**SUPERIOR COURT**                                          **CIVIL DIVISION**
**Washington Unit**                                          **Docket No. 289-5-15 Wncv**

**STATE OF VERMONT**
    **Plaintiff**

    **v.**

**SOON K. KWON**
    **Defendant**

## DECISION
### The State's Motions to Reconsider (MPR 4)
### and for Summary Judgment (MPR 10)

Defendant Soon K. Kwon is a residential landlord in Burlington.  The State alleges that he has violated Vermont's lead law, 18 V.S.A. §§ 1751–1767, by failing to perform certain essential maintenance practices (EMPs) at two of his properties.  The State also claims that this failure amounts to a violation of Vermont's Consumer Protection Act (CPA), 9 V.S.A. §§ 2451–2466b. The failure to perform EMPs claim is count 3 of the complaint.  The CPA claim is count 4.  The State has now has filed a motion for summary judgment on the issue of liability.

## Motion to Reconsider

Earlier, the court dismissed two other CPA claims.  In counts 1 and 2, the State alleged that Mr. Kwon violated the CPA by filing a false affidavit with the State and by violating the terms of an assurance of discontinuance (AOD).  To be clear, the State has taken no action against Mr. Kwon for allegedly filing a false affidavit or violating the AOD *except* as doing so might have violated the CPA.  The court dismissed those CPA claims on August 26, 2015 as not having a sufficient nexus to tenants to mislead them.  The State's remaining CPA claim count 4) is for failing to employ the EMPs, something that has a direct impact on tenants and the consumer marketplace.  The State filed (on September 10, 2015) a motion to reconsider the court's dismissal of counts 1 and 2, essentially arguing that the court misunderstood the law and should permit those claims under the unfairness prong of the CPA.

The motion to reconsider is denied.  Those claims are too remote to fall within the CPA. They address Mr. Kwon's relationship with the State, not representations likely to be relied on in the consumer marketplace.  Count 4, on the other hand, properly addresses Mr. Kwon's alleged conduct in relation to its impact on the consumer marketplace.

## Motion for Summary Judgment

The State alleges that Mr. Kwon failed to stabilize deteriorated paint at both his

Colchester Avenue and South Willard Street properties; failed to remove paint chips on the ground at the Colchester Avenue property; failed to install window well inserts or protect window linings at the South Willard Street property; and failed to provide a lead safety pamphlet to tenants at the South Willard Street property.

Pursuant to 18 V.S.A. § 1759(a), EMPs must be performed in all "rental target housing" by someone who has completed an approved EMP training program, and who must comply with § 1760, "unless a lead inspector or a lead risk assessor has certified that the property is lead-free." There is no dispute that the properties at issue are "rental target housing." Section 1760(a) reiterates that "[a]ll paint in target housing and child care facilities is presumed to be lead-based unless a lead inspector or lead risk assessor has determined that it is not lead-based." The statutes are unambiguous: unless the property has been certified lead-free, EMPs must be performed.

On June 3, 2014, Mr. Kwon filed EMP compliance statements certifying that the EMPs had been performed at both locations. The filings reflect his claim that he, who has been trained to do the EMPs, did them. On August 19, 2014, a Burlington housing inspector visited the Colchester Avenue property and documented apparent violations of 18 V.S.A. § 1759. On August 26, 2014, a Department of Health Program Technician visited the South Willard Street property and documented apparent violations of § 1759. The State seeks summary judgment based on the testimony of and evidence assembled by those inspectors.

Mr. Kwon has raised several issues in opposition. He claims that there can be no CPA violation in this case because the apartments were rented before the State claims the lead law violations occurred. Therefore, he argues, the State cannot show that any particular tenant relied on any misrepresentation about the condition of the premises *when the lease was signed*. The Vermont Supreme Court has never limited the CPA's applicability to the moment a lease is signed and the court declines to so rule as a matter of law. A landlord and tenant have an ongoing relationship. Signing a lease may be an isolated event of importance, but the landlord's obligation to ensure habitability persists throughout the tenancy as a matter of law. The State is empowered to enforce *any* violation of 9 V.S.A. § 2453 when doing so is in the public interest. 9 V.S.A. § 2458(a). Section 2453(a) applies to both deceptive and *unfair* practices affecting the consumer marketplace. A landlord is not immune from the CPA for the duration of the tenancy merely because there was no demonstrable violation on the day the lease was signed.

He argues that there is no longer any presumption that paint in rental target housing is lead paint and the State cannot prove that his properties have lead paint (at least in some locations) where violations were noted. This argument is based on his interpretation of statutory amendments that, according to him, moved that presumption out of the EMP statute, 18 V.S.A. § 1759, and into the safe practices statute, 18 V.S.A. § 1760, where it now applies exclusively. The court is not persuaded that the amendment was intended to have that effect. In any event, the plain language of § 1759 independently requires the performance of EMPs unless the property has been certified lead-free and incorporates the presumption in § 1760. Nothing in the record indicates that either property has been certified lead-free. EMPs are required.

Mr. Kwon asserts that some of the apparent lead law violations actually are not

2

violations. These arguments depend largely on, for example, how one measures a square foot and whether tenants had access to certain portions of the property. The record is insufficient for the court to rule on these issues as a matter of law.

Mr. Kwon's principal argument in opposition to summary judgment arises out of an inference necessary to the State's motion: that what the inspectors documented in August must have existed in June when Mr. Kwon's compliance statements were filed, meaning that he did not perform the EMPs. Such an inference, of course, directly contradicts Mr. Kwon's representations in his compliance statements as well as his affidavit in this case. He argues that this presents a "textbook" "he said/she said" dispute of fact that bars summary judgment.

An affidavit is not always sufficient to establish a dispute of fact for summary judgment purposes. See, e.g., *H&E Equipment Services, Inc. v. Cassani Electric Inc.*, 2017 VT 17, ¶ 20 (bald assertion in affidavit that defendant never served with process insufficient to establish dispute about presumed validity of foreign judgment); but see *id.* ¶ 22 (Robinson, J., concurring in part, dissenting in part) (describing that conclusion as a "dramatic departure from well-established and universal principles of summary judgment adjudication").

In this case, Mr. Kwon directly asserts that he took certain specific actions (the EMPs) and that certain conditions that may have been present in August were not present in June. The State urges that its photographic and other evidence is dispositive. However, the court could not so conclude without making a credibility determination about Mr. Kwon's testimony. This is not a case in which testimony is too conclusory, general, or fantastical to establish a dispute. It requires a credibility determination, and that must be made by a finder of fact. On summary judgment, of course, there is no finder of fact. For this reason, the State's motion must be denied.

## ORDER

For the foregoing reasons,

1. The State's motion to reconsider is denied, and
2. The State's motion for summary judgment is denied.

Pursuant to the ruling issued March 3, 2017 on Attorney Towle's motion to withdraw (MPR #11) as Mr. Kwon's attorney, that motion is now granted, and Mr. Kwon has 30 days to have a new attorney enter the case or file a notice of pro se appearance showing that he is representing himself.

After the 30 day period has run, the Clerk shall schedule a pretrial status conference to determine the trial needs of the case.

Dated at Montpelier, Vermont this _____ day of June 2017.

_____
Mary Miles Teachout,

3

Superior Judge