*Eliason v. Harrison*, No. 745-9-16 Cncv (Mello, J., June 26, 2018).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT

CHITTENDEN UNIT

CIVIL DIVISION

| | |
|---|---|
| RON ELIASON and ANTHONY ELIASON,<br><br>Plaintiffs<br><br>v.<br><br>SCOTT HARRISON and LAURIE HARRISON,<br><br>Defendants | Docket No. 745-9-16 Cncv |

RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

The Eliasons haved sued their former landlords, the Harrisons, for renting them the Harrisons' former home without complying with City of Burlington rental requirements, as well as for the general conditions of the property. The Eliasons move for summary judgment on two of their three claims: Consumer Fraud and Willful Withholding of Security Deposit. They do not seek summary judgment on a Breach of Warranty of Habitability claim. The Harrisons' countercomplaint alleges certain facts but does not identify any cause(s) of action; they have not cross-moved for summary judgment. The Eliasons are represented by Thomas Nuovo, Esq.; the Harrisons are represented by Thomas Higgins, Esq.

Factual Background

The following facts are undisputed unless otherwise noted. The Harrisons own 296 South Cove Road in Burlington, Vermont ("the Property"). They previously resided there but sought to rent the Property once they relocated to California. The Harrisons engaged a realtor to find a tenant. The Eliasons signed a two-year lease running from January 1, 2015 to December 1, 2016, with $2,700 in monthly rent and a $2,700 security deposit.

Burlington City Ordinances require, in relevant part, that owners of rental units (1) register the property, (2) have an enforcement officer conduct an inspection to determine whether the property is in compliance with Chapter 18, "Housing," of the Burlington City Ordinances, and (3) obtain a certificate of compliance. *See* Burlington City Ordinances ("BCO") 18-15, 18-

1

16, and 18-18. The Property was subject to these requirements, and they were not complied with by either the Harrisons or their realtor.

In spring 2016, the Eliasons contacted the City of Burlington's Code Enforcement Office regarding the condition of the premises, which included complaints of mice (the extent of which is disputed) and missing smoke and carbon monoxide detectors (the origin of which is disputed). Burlington Code Enforcement then inspected the property on May 26, 2016. As a result of issues then identified, the Code Enforcement Office posted the house as unfit for human habitation. The Eliasons were unable to sleep at the house while these issues persisted. They began moving out their belongings at this time and they fully vacated the premises on May 31, 2016. On June 14, 2016, the Eliasons' counsel informed the Harrisons that they had moved out. The habitation post came down on June 17, 2016. On June 27, 2016, the Harrisons informed the Eliasons by letter that they were withholding the entire $2,700 security deposit.

After filing this action in September 2016, the Eliasons contested the withholding of the security deposit before the City of Burlington Housing Board of Review. In written decision, the Board found $1,530.39 was improperly withheld. Plaintiff's Exhibit 3, Findings of Fact, Conclusions of Law and Order, In re: Request for Hearing of Ron and Anthony Eliason, at 5 (City of Burlington Housing Board of Review Nov. 7, 2016) ("HBR Order"). The Board found however that the withholding was not willful. Id. The Board further concluded that "the period uninhabitability did not rise to such a level that it breached the warranty of habitability or the parties' underlying lease agreement." Id. at 4. Since the Board also found the Eliasons could have returned to the Property after June 17, 2016, it found them responsible for the rent for the remainder of June. Id. The Harrisons still have not paid the $1,530.39 ordered amount.

## Discussion

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party demonstrates it is entitled to judgment as a matter of law. See H&E Equip. Servs., Inc. v. Cassani Elec., Inc., 2017 VT 17, ¶ 10; V.R.C.P. 56(a). The moving party has the burden to prove that no genuine dispute of material fact exists, while the opposing party must be given the benefit of all reasonable doubts and inferences. Couture v. Trainer, 2017 VT 73, ¶ 9.

I.  Consumer Protection Act

The Harrisons did not comply with three rental housing ordinances prior to renting the property, which the Eliasons allege violates Vermont's Consumer Protection Act.

The Consumer Protection Act ("CPA") prohibits "deceptive acts or practices in commerce." 9 V.S.A. § 2453(a). A "deceptive act or practice" requires that: "(1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product." Madowitz v. Woods at Killington Owners' Ass'n, Inc., 2014 VT 21, ¶ 23, 196 Vt. 47 (internal quotation marks omitted). Deception is measured by an objective standard that focuses on the risk of consumer harm. Peabody v. P.J.'s Auto Vill., Inc., 153 Vt. 55, 57 (1989).

2

The question here is whether it is a deceptive practice to rent a property that does not comply with rental regulations. By offering a property to rent, landlords impliedly represent to tenants that the property is in compliance with the law. Bisson v. Ward, 160 Vt. 343, 351 (1993). Thus where landlords rented an apartment they knew was in violation of health and safety codes and for which they had not obtained a certificate of occupancy, the court found the landlords committed "a deceptive act by renting an apartment that was in violation of law." Id.; see also L'Esperance v. Benware, 2003 VT 43, ¶¶ 12-16, 175 Vt. 292 (citing Bisson in affirming summary judgment in tenants' favor on liability for rental that was in violation of health and safety codes due to contaminated water and electrical and structural deficiencies).

Here, the Harrisons did not comply with BCO 18-15, 18-16, and 18-18, requiring that they register the rental property, have it in inspected, and obtain a certificate of compliance. As in Terry, L'Esperance, and Bisson, the property was in violation of housing regulations, as these ordinances are "housing regulations" under the Residential Rental Agreements Act. See 9 V.S.A. § 4451(2).

Yet, because Terry, L'Esperance, and Bisson involved substantive code violations, they can be read to stand for the proposition that regulatory non-compliance *may*, but need not necessarily, violate the Consumer Protection Act. Just as de minimis housing code violations standing alone do not breach the warranty of habitability under the Residential Rental Agreements Act, see Hilder v. St. Peter, 144 Vt. 150, 160 (1984), it is not necessarily the case that *any* regulatory non-compliance would violate the CPA.

While noting this and acknowledging that the Burlington ordinances can fairly be characterized as procedural, the ordinances here are nevertheless significant. They exist to ensure rentals meet minimum standards; widespread noncompliance would threaten the integrity of the Burlington rental market. Thus the underlying logic is the same: the landlords rented property in violation of meaningful housing regulations. Therefore, the violation was not de minimis.

The Harrisons emphasize their lack of knowledge of the rental requirements, and attempt to distinguish Bisson by arguing the conditions of the Property were not nearly as bad as the residence in that case. The respective conditions of the respective properties are irrelevant. What is relevant is that the landlords committed a deceptive act in violation of the CPA when they rented a dwelling to the Eliasons in violation of Burlington's housing ordinances.

The Harrisons' lack of knowledge is similarly irrelevant. The CPA's purpose is to "to protect the public and to encourage fair and honest competition." 9 V.S.A. § 2451. Thus the "absence of intent based upon a lack of knowledge or expertise is not a defense to a claim" under the CPA. L'Esperance, 2003 VT 43, ¶ 15 (internal quotation marks omitted). Instead, "the burden is appropriately placed on sellers to engage in due diligence." Gregory v. Poulin Auto Sales, Inc., 2012 VT 28, ¶ 15, 191 Vt. 611. This is not undermined by the Supreme Court's holding in Terry v. O'Brien, that tenants premising CPA claims on the landlords' failure to disclose code violations "must show that the landlords knew or should have known of the alleged defect in the premises." 2015 VT 132, ¶ 38, 200 Vt. 511. Simply and reasonably, the landlord is charged with knowing the law.

3

The Harrisons were obligated to learn and comply with the law. Any attempt to cast blame on their realtor is a separate matter between them. Furthermore, the court rejects the Harrisons' argument that they would have received a certificate of compliance if they had sought one. This court cannot allow landlords to violate the law and then prove afterwards that their non-compliance was harmless. The Eliasons are entitled to judgment as a matter of law that the Harrisons violated the Consumer Protection Act in offering a rental that did not comply with BCO 18-15, 18-16, and 18-18.

The court's liability finding is based solely on non-compliance with rental ordinances. It does not decide whether the Property was habitable under 9 V.S.A. § 4457(a) or reach the argument, apparently first raised in the reply, that the Harrisons also violated the CPA by renting a property that did not comply with the warranty of habitability. Even if properly raised, there is a genuine dispute on the conditions of the Property and whether the warranty of habitability was breached. The Eliasons' argument that the Harrisons also violated the CPA because they did not have a lead inspection certificate is not addressed since this is not included in the complaint.

The next issue is the Eliasons' remedy. They seek the return of all consideration paid, *i.e.*, $45,900 (17 months' rent from January 1, 2015 through May 31, 2016), plus attorney's fees and costs.

A consumer who sustains a claim under 9 V.S.A. § 2453 may recover the amount of his damages or the value of the consideration given, plus reasonable attorney's fees and exemplary damages. 9 V.S.A. § 2461(b). Our Supreme Court has previously characterized 9 V.S.A. § 2461(b) as "directed toward providing an award of equitable relief and damages or restitution[.]" Gramatan Home Inv'rs Corp. v. Starling, 143 Vt. 527, 534 (1983) (emphasis added). This characterization aside, the court has not expressly addressed whether the "consideration" option simply grants the consumer "an alternative form of compensatory relief in the nature of restitution" or is "a civil penalty untethered from the normal restitutionary requirement of restoring the parties to their original status." Vastano v. Killington Valley Real Estate, 2010 VT 12, ¶ 5, 187 Vt. 628.[1]

The Supreme Court has addressed a similar question under the Salvage Title Act, which requires the seller, "at the option of the buyer, to refund to the buyer the purchase price[.]" 23 V.S.A. § 2093(c). Though § 2093 was "silent on the subject," where the consumer continued to use the vehicle, "general equitable principles" entitled the seller to a setoff equivalent to the value of the use of the vehicle. Jensvold v. Town & Country Motors, Inc., 162 Vt. 580, 584 (1994). Our Supreme Court then applied Jensvold to hold that § 2093 required the purchaser to elect whether to return the car and be reimbursed the purchase price, or receive as damages the difference between the purchase price and the car's actual value. Gregory v. Poulin Auto Sales, Inc., 2010 VT 85, ¶ 15, 188 Vt. 619. Any other result "would effectively allow" the purchaser "to gain a windfall profit." Id. The court therefore found equity required interpreting § 2093's use of the term "refund" as incorporating the concept of returning the vehicle, *i.e.*, containing "the normal restitutionary requirement of restoring the parties to their original status."

---

[1] This latter interpretation is however undermined by the court's holding that § 2461(b) only authorizes civil penalties payable to the state, and that its reference to "penalties." Gramatan, 143 Vt. at 535.

4

This court is similarly guided by the "general equitable principles" cited in <u>Jensvold</u> and <u>Gregory</u> and which were not specific to § 2093. In so doing, the court endeavors to balance the CPA's myriad goals to "deter future misconduct," "educate consumers or vendors," and "promote a more honest and open marketplace" while encouraging "a commercial environment highlighted by integrity and fairness." <u>Madowitz v. Woods at Killington Owners' Ass'n, Inc.</u>, 2014 VT 21, ¶ 30, 196 Vt. 47 (citations omitted). As such, the consumer must be made whole by either damages or restitution, while seller misconduct is deterred by forcing the seller to return any ill-gotten gains, but no more.

Quite simply, a CPA violation does not per se make all gains to the seller ill-gotten. If one sold a car with a stereo that was of a lower-quality than represented, that does not make the entire price paid for the car ill-gotten. Rather, the consumer can be made whole through either damages in the amount the stereo was over-valued, or by undoing the transaction. The CPA "is clearly remedial in nature," <u>State v. Custom Pools</u>, 150 Vt. 533, 536 (1988), yet requiring a seller to return gains that were not ill-gotten would be punitive. The CPA however provides for punishment through civil penalty, exemplary damages, and attorney's fees, while the relevant Burlington City Ordinances also establish criminal penalties. *See* BCO 18-31(a)(2) (providing that anyone found to have violated Article II, which encompasses BCO 18-15, 18-16, and 18-18, is deemed to have committed a criminal offense punishable by a fine of $200-$500 and/or by imprisonment for not more than thirty (30) days, with each days' failure to comply constituting a separate offense). Requiring a seller to return *only* ill-gotten gains deters future misconduct while maintaining fairness to sellers.

Here, the Eliasons seek to recover all amounts paid, over $45,000, although they are unable to return the value of what was received. The court finds restitution is unavailable here, and the Eliasons have not proved they suffered $45,000 in damages. Though the Harrisons committed a deceptive act by offering a rental that did not comply with the law, the Eliasons' damages and injury were not proven commensurate to all rent paid.

The Eliasons are of course entitled to prove their damages by showing they "sustained damages or injury as a result of any false or fraudulent representations or practices of the violator." <u>Lang McLaughry Spera Real Estate, LLC v. Hinsdale</u>, 2011 VT 29, ¶ 32, 190 Vt. 1 (internal brackets and quotation mark omitted). The Eliasons' damages for the Harrisons' failure to comply with the rental ordinances are distinct from any damages they could be entitled to if the court were to later find the Harrisons also violated by the CPA by breaching the warranty of habitability. How much the Eliasons were harmed by the Harrisons possibly multiple CPA violations is a question of fact, hence the court denies the Eliasons' motion on the issue of damages.

Similarly, the court cannot yet award the Eliasons reasonable attorney's fees. Such an award is premised their ability to prove that they have been somehow harmed or that they have "accomplished some broader public purpose underlying the legislation by exposing, for example, lawless conduct or deterring future misconduct." <u>Anderson v. Johnson</u>, 2011 VT 17, ¶¶ 9–11, 189 Vt. 603 (mem.) (internal quotation marks omitted); see also <u>Kwon v. Eaton</u>, 2010 VT 73, ¶ 18, 188 Vt. 623 (mem.) (rejecting argument that tenants were not entitled to attorney's fees on CPA claim for which jury awarded no damages, insofar as jury had awarded damages on their

habitability claim, and "there was a clear overlap between the damages elements claimed for breach of the lease, breach of warranty, and consumer fraud").[2]

II. Wrongful Withholding of Security Deposit

The City of Burlington Housing Board of Review found the Eliasons were entitled to recover $1,530.39 as the amount the Harrisons improperly withheld. The Board also found the withholding was not willful. The Harrisons have still not returned this ordered amount. Pursuant to 9 V.S.A. § 4461(e), the Eliasons seek double the amount withheld plus 12% interest and reasonable attorney's fees and costs. They argue the Harrisons' failure to comply with the Board's judgment is now a willful withholding. The Harrisons attempt to re-argue the Board's order, claiming "rightful possession" of the deposit is at issue in this litigation as the Board did not have evidence regarding the Eliasons true motive for calling the Code Enforcement Office.

The Legislature grants municipalities the authority to establish a housing board of review that may "resolve disputes related to security deposits for the occupancy of dwellings[.]" 24 V.S.A. § 5005(c)(1). A person aggrieved by a board decision may appeal it to the superior court. 24 V.S.A. § 5006. These statutes shall be construed to give municipalities "the fullest and most complete powers possible concerning the subject matter hereof." 24 V.S.A. § 5009.

Though wrongful withholding of the security deposit was pled in the Eliasons' September 2016 complaint, they litigated this issue in front of the Housing Board of Review in October 2016. The Harrisons' appeal was dismissed as untimely. The Harrisons, who allegedly cite new evidence, did not file a motion for relief from final judgment.

The Board's order therefore became a final judgment, though the effect of this judgment is admittedly confusing. The Board found the Harrisons' owed a certain amount, and that their failure to return the security deposit in the first instance was not willful. Neither party may re-litigate now. *See* Daiello v. Town of Vernon, 2018 VT 17, ¶ 12 ("Claim preclusion bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical." (internal quotation marks omitted)). The Harrisons may not argue the amount due the Eliasons; equally, the Eliasons may not re-argue the Board's non-willful finding.

The Harrisons' failure to comply with the Board's order is now an issue of *enforcing the Board's order*—not of wrongful withholding of the security deposit in the second instance. Stated differently, the Harrisons failure to pay a judgment relating to a security deposit is not a wrongful withholding of a security deposit under 9 V.S.A. § 4461(e). Furthermore these facts post-date the Eliasons' original complaint.

The proper vehicle is instead a collection action. Given the procedural posture of this case and the unique nature of the Board's concurrent authority to issue judgments, the court

---

[2] This may well be a case where an award of attorney's fees is justified on the grounds that the plaintiffs have accomplished a "broader purpose," even if they are unable to prove damages from the violation. Enforcing compliance with Burlington's housing ordinances is, clearly, of public importance. The court will not address that issue at this time, however, because it remains to be seen whether the Eliasons will be able to prove damages. In addition, the parties have not yet had an opportunity to fully brief the "broader purpose" question.

treats the complaint as having been constructively amended to include a collection action for the amount of the Board's judgment. See <u>LeClair v. LeClair</u>, 2017 VT 34, ¶¶ 33–34 (parties may constructively amend complaint through issues squarely addressed in briefs). Based on the information presented, the court finds the Eliasons have carried their burden and are entitled to the $1,530.39 awarded by the Board, plus post-judgment interest. Finding the damages are reasonably certain, the court also awards prejudgment interest. See <u>Ring v. Carriage House Condo. Owners' Ass'n</u>, 2014 VT 127, ¶ 34, 198 Vt. 109. This would appear to be the most practical solution to fairly, efficiently, and economically resolve this issue. If the Harrisons' believe they are prejudiced or that facts not before the court mandate against summary judgment on the collection action, they may file a motion to amend the judgment or for relief from judgment. See V.R.C.P. 59 & 60.

ORDER

Plaintiffs' motion for partial summary judgment is *granted* on the issue of liability under the Consumer Protection Act for failure to comply with Burlington City Ordinances 18-15, 18-16, and 18-18. Plaintiffs' motion is *denied* as to damages under the Consumer Protection Act on this theory of liability. Plaintiffs' motion for summary judgment to collect the judgment ordered by the City of Burlington Housing Board of Review is *granted*.

SO ORDERED this 29th day of June, 2018.

Robert A. Mello
Superior Court Judge